United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Mercedes Fadraga, Plaintiff, | ) |
| v. | ) Civil Action No. 23-23503-Civ-Scola |
| | ) **In Admiralty**[1] |
| Carnival Corporation, dba | ) |
| Carnival Cruise Lines, Defendant. | ) |

### Order Denying Motion to Dismiss and Granting Motion to Join

Plaintiff Mercedes Fadraga seeks to recover damages from Defendant Carnival Corporation, doing business as Carnival Cruise Lines, for injuries she suffered when hot soup spilled on her, while aboard Carnival's ship, resulting in second- and third-degree burns on her legs. (Am. Compl., ECF No. 17.) In her complaint, Fadraga sets forth a claim for general negligence (count one) as well as a claim for negligent failure to warn (count two). (*Id.*) Carnival, in response, argues the Court should dismiss the complaint because Fadraga fails to (1) plead facts showing that Carnival had notice of the risk-creating condition; (2) allege that the risk-creating condition was not open and obvious; and (3) set forth factual allegations establishing proximate cause. (Mot., ECF No. 20.) Carnival also complains that Fadraga's complaint is a shotgun pleading and improperly sets forth a claim for vicarious liability. (*Id.* at 14–16.) Fadraga opposes Carnival's motion (Resp., ECF No. 24), to which Carnival has replied (Reply, ECF No. 25). After careful review, the Court **denies** Carnival's motion (**ECF No. 20**). At the same time, in denying Carnival's motion to dismiss—and therefore requiring Carnival to answer the complaint—the Court also **grants** Carnival's motion for leave to join additional parties (**ECF No. 26**).

---

[1] The Plaintiff has alleged that both she and the Defendant have Florida citizenship. Accordingly, there is no diversity jurisdiction over this case, as the Plaintiff suggests in her complaint. (Am. Compl. ¶ 3.) As such, the Court strikes the complaint's demand for a jury trial and exercises its admiralty, and not diversity, jurisdiction over this case. *See Beiswenger Enterprises Corp. v. Carletta*, 86 F.3d 1032, 1037 (11th Cir. 1996) (noting that, "as in all admiralty cases, there is no right to a jury trial"); *Barry v. Shell Oil Co.*, No. CIVA 13-6133, 2014 WL 775662, at *3 (E.D. La. Feb. 25, 2014) ("As Plaintiff's claims here are solely based on general maritime law and there is a lack of diversity among the parties, there is no way for Plaintiff to have a trial by jury in this Court.").

1. **Background**[2]

In December 2022, Fadraga was a passenger aboard Carnival's ship, the *Conquest*. (Am. Compl. ¶¶ 9, 10.) Before the ship set sail, Fadraga and her traveling companions went to the ship's "Deck 9" to have lunch. (*Id.* ¶ 10.) Fadraga says that "soup was provided to her at the buffet by Carnival" but also says that one of her companion's carried the soup back to Fadraga's table. (*Id.* ¶¶ 16, 17.) The bowl of soup was so hot that it was nested into a second bowl—Fadraga does not say by whom—so that it could be carried. (*Id.* ¶ 17.) At some point, it's not clear from the complaint when, as Fadraga was sitting at the table, the soup spilled, landing on her legs, soaking her pants, and immediately resulting in blistering and significant burns. (*Id.* ¶ 18.)

Previously, in October 2019, another passenger on the *Conquest* was burned by scalding hot water from a beverage center. (*Id.* ¶ 21.) And before that, in March 2019, on a different ship, the *Horizon*, a crewmember handed a minor a slice of pizza with scalding hot cheese that slipped off and burned the passenger's arm. (*Id.* ¶ 20.)

According to Fadraga, industry standards require that soup not be served at temperatures that can cause burns. (*Id.* ¶ 13.) She believes the soup exceeded these standards because she suffered second- and third-degree burns as a result of the spilled soup. (*Id.* ¶ 14.)

Fadraga seeks to hold Carnival responsible for her injuries, claiming Carnival was negligent in serving such hot soup and that Carnival failed to warn her that the soup was so hot.

2. **Legal Standard**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate

---

[2] This background is based on the allegations in Fadraga's complaint. For purposes of evaluating Carnival's motion, the Court accepts Fadraga's factual allegations as true and construes those allegations in the light most favorable to her per Federal Rule of Civil Procedure 12(b)(6).

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

### 3. Analysis
### A. Carnival fails to persuade that Fadraga's allegations are insufficient to imply Carnival had notice of the risk-creating condition.

At the heart of Fadraga's complaint is her allegation that Carnival breached its duty of care by serving unreasonably hot soup at its buffet that burned her when a bowl of it was spilled on her legs. In response, Carnival urges dismissal, arguing, primarily, that the complaint fails to allege facts showing that Carnival had either actual or constructive notice of the hazardous nature of the soup. In particular, Carnival says Fadraga's notice allegations are defective because they (1) don't even show the existence of a risk-creating condition in the first place; (2) fail to set forth facts showing the hazardous condition existed for a sufficiently lengthy time period; (3) don't establish substantially similar incidents that occurred previously; and (4) only vaguely reference safety standards without explaining either how Carnival violated those standards or how those standards connect to Fadraga's injuries. After careful review, the Court disagrees with Carnival and finds Fadraga has sufficiently alleged notice—albeit barely.

As both parties acknowledge, under maritime law, a shipowner owes a passenger a duty of ordinary reasonable care under the circumstances. *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989); *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625 (1959). Accordingly, "[a] cruise line is not liable to passengers as an insurer, but instead is liable to passengers only for its negligence." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1178 (11th Cir. 2020). To establish a maritime negligence claim, a cruise passenger must establish "(1) the defendant had a duty to protect the plaintiff

from a particular injury, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm." *Id.* With respect to the scope of a cruise ship's duty to its passengers, the standard of ordinary reasonable care under the circumstances requires, "as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition, at least so long as the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Id.* "Liability for a cruise ship operator thus hinges on whether it knew"—actual notice—"or should have known"—constructive notice—"about the dangerous condition." *Id.* Actual notice hinges on whether the defendant knew of the danger. *See Keefe*, 867 F.2d at 1322. To show constructive notice, on the other hand, a plaintiff must allege either that (1) "a defective condition existed for a sufficient period of time to invite corrective measures" or (2) there is evidence of "substantially similar incidents in which conditions substantially similar to the occurrence in question must have caused the prior accident." *See Tesoriero*, 965 F.3d at 1178-79 (quoting *Monteleone v. Bahama Cruise Line, Inc.*, 838 F.2d 63, 65 (2d Cir. 1988)).

  Carnival gives short shrift to its argument that it didn't have actual notice of any risk-creating condition. Part of its argument seems to be that Fadraga failed to set forth facts establishing the existence of any risk-creating condition at all, and therefore there was nothing for Carnival to have notice of. (Mot. at 7 ("Plaintiff has not demonstrated if such a risk creating condition even existed in the first place.").) In pressing this position, Carnival cites five paragraphs of the complaint. (*Id.*) But within these paragraphs, Fadraga says that the soup that spilled on her, served from Carnival's buffet, resulted in second- and third-degree burns. (Am. Compl. ¶¶ 11, 14.) Without any further breakdown or analysis from Carnival, the Court is hard pressed to agree with Carnival: these facts (never mind other facts in the complaint), assuming they are true, are sufficient to allow the Court to draw the reasonable inference that, at a minimum, the soup being served to Fadraga from the buffet was dangerously hot.

  Continuing, Carnival isolates a handful of other allegations that it says also fail to establish actual notice. (Mot. at 7–8 (quoting Am. Compl. ¶¶ 27, 29, 32, 35).) While the Court agrees that many of Fadraga's allegations are, indeed, comprised of mostly superficial conclusions, devoid of any factual support, Carnival glosses over other allegations that do present facts and then fails to address the inferences that reasonably spring from those facts. In reviewing the complaint's allegations as a whole, accepting Fadraga's statements as true and construing the reasonable inferences of those facts in the light most favorable to Fadraga, the Court finds the complaint sufficiently alleges actual notice. *See*

*FindWhat Inv'r Group v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (noting that, in reviewing a complaint on a motion to dismiss, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff").

While the Court agrees Fadraga doesn't directly allege actual notice, the Court finds the inference of actual notice ultimately inescapable. The facts in the complaint establish that Carnival prepared and served soup that was so hot that, even after being transported from the buffet to Fadraga's table, it resulted in severe burns to Fadraga's legs when it was spilled. Further, the soup was so hot that someone (the complaint doesn't specify who) placed "a second bowl . . . underneath" the bowl the soup was in "so that Plaintiff's traveling companion could carry the soup back to Plaintiff's table." (Am. Compl. ¶ 17.) While it is certainly possible that the soup could have arrived at Fadraga's table without Carnival's realizing how dangerously hot it was, that would ignore the reasonable inference that Carnival, in handling the soup from preparation to service, was plausibly aware of how hot it was.

Fadraga's allegations are distinct from those cases where a danger is hidden, not readily unobservable, or fleeting, such as with a defective piece of equipment or a transient substance (of unknown origins) on a floor. In such cases, plaintiffs often fail to supply facts showing that the risk-creating condition was, or should have been, readily observable. For example, in *Tesoriero v. Carnival Corp.*, a passenger sued Carnival for injuries she sustained when a chair she attempted to sit in collapsed beneath her. 965 F.3d at 1175. In disagreeing with the plaintiff's position that Carnival had notice of the dangerous condition of the chair, the Eleventh Circuit opined that the plaintiffs had failed to establish that there was any observable indication that the chair was unsafe before it collapsed. *Id.* at 1179. Here, in contrast, the Court would be hard pressed to ignore the reasonable inference that Carnival would be aware of how hot soup was that Carnival itself had prepared and served. Here, the risk-creating condition—the high temperature of the soup—was presumably readily observable by whoever prepared or served it; in *Tesoriero*, though, the risk-creating condition—a hidden defect in the chair—was not.

Because of Fadraga's allegations of Carnival's direct contact with the dangerous condition—that is, the allegedly unreasonably hot soup—Carnival's argument that Fadraga fails to supply facts showing that the hazard existed for a sufficient length of time is misplaced. To that end, Fadraga's case is readily distinguishable from cases like *Holland v. Carnival Corp.*, 50 F.4th 1088 (11th Cir. 2022), and *Newbauer v. Carnival Corp.*, 26 F.4th 931, 935 (11th Cir. 2022), *cert. denied,* 143 S. Ct. 212 (2022) where passengers sued Carnival for injuries

sustained when they slipped and fell because of transient substances underfoot. In those cases, unlike here, there were no allegations that Carnival had any idea that the dangerous conditions existed before the plaintiffs encountered them. For example, there were no allegations that a crew member deposited the transient substances or even viewed them—just that it was possible that a crewmember "*may have* been in a position to see," for example, "that there was a liquid on the stairs in question." *Holland*, 50 F.4th at 1092 (quoting the district court). Here, to the contrary, the allegations establish that Carnival had direct contact and involvement with an arguably palpable hazard.

Carnival also complains about Fadraga's allegations that Carnival failed to comply with industry standards. According to Carnival, these allegations fail to establish notice because they do not (1) "name or cite to any such standard"; (2) demonstrate that Carnival deviated from such standards; or (3) link the standards to Carnival's notice. (Mot. at 10.) The Court is not persuaded. First, Fadraga's allegations regarding industry standards are sufficiently descriptive: she says that industry standards "require that soup not be served at a temperature so as to cause burns." (Am. Compl. ¶ 13.) Carnival cites no authority that, at the pleading stage, a complaint must cite to a specific standard with any more particularity than that. Next, Fadraga's allegation that the soup that Carnival served burned her legs is sufficient to establish that Carnival plausibly deviated from the described standard. And, finally, the Court finds Fadraga's allegations that the soup failed to comply with industry safety standards sufficiently linked to Carnival's notice that the soup was dangerously hot. While not conclusive, the Court finds that evidence that a cruise ship operator served soup at a temperature that violates an industry standard could be used to at least help show that a cruise ship operator should have been on notice that the soup was dangerously hot. *See Andersen v. Royal Caribbean Cruises Ltd.*, 543 F. Supp. 3d 1346, 1357 (S.D. Fla. 2021) (Bloom, J.) ("[E]vidence that an allegedly dangerous condition failed to comply with industry safety standards, together with other evidence of notice, can be used to establish constructive notice."). And, because the Court finds Fadraga's allegations otherwise sufficient to imply Carnival's notice, even without her claims about the industry standards, any inadequacies in those allegations are, in any event, inconsequential.

Whether the evidence bears out Fadraga's notice allegations remains to be seen. But, for now, those allegations are sufficient to allow the Court to infer that Carnival had notice of the temperature of the soup that Carnival itself

prepared and served and, based on that temperature, Carnival knew or should have known, that it was too hot.[3]

### B. Common sense and judicial experience allow the Court to infer that Fadraga's allegations establish, just barely, that the hazardous nature of the soup was not open and obvious.

Next, Carnival complains Fadraga's negligent failure to warn claim must be dismissed because she failed to allege that the hazard was not open and obvious. While the allegations, and Fadraga's response to Carnival's motion, leave much to be desired, the Court nonetheless finds her failure-to-warn claim survives dismissal.

The duty of care owed by a cruise operator to its passengers includes a "duty to warn of known dangers that are not open and obvious." *Frasca v. NCL (Bahamas) Ltd.*, 654 F. App'x 949, 952 (11th Cir. 2016); *see also Lugo v. Carnival Corp.*, 154 F. Supp. 3d 1341, 1345 (S.D. Fla. 2015) (Moore, J.). In determining whether a dangerous condition is open and obvious, courts apply the "reasonable person" standard. *Frasca*, 654 F. App'x. at 952. A plaintiff's subjective observations are irrelevant in determining whether a duty to warn existed. *Lugo*, 154 F. Supp. 3d at 1346; *Flaherty v. Royal Caribbean Cruises, Ltd.*, No. 15-22295, 2015 WL 8227674, at *3 (S.D. Fla. Dec. 7, 2015) (Lenard, J.). For a purported danger to be "open and obvious," the condition must be observable and appreciable by a reasonable person through the ordinary use of their senses. *See Frasca*, 654 F. App'x at 952.

Although the Court agrees with Carnival that the complaint here lacks direct allegations that the hazardous nature of the soup was not open and obvious, at the same time, the Court cannot ignore the characteristics inherent to this specific danger. In other words, while one might readily perceive that soup is hot, Carnival fails to explain how a passenger could appreciate the extent of the heat just by looking at it. That is, "even though a plaintiff may be able to ascertain the danger of an open and obvious condition via her senses, she may not understand the *extent* of the danger." *Barham v. Royal Caribbean Cruises Ltd.*, 556 F. Supp. 3d 1318, 1329 (S.D. Fla. 2021) (Moreno, J.) (citing *Frasca*, 654 F. App'x at 952–53) (emphasis in original). And, as determined in *Barham*, "the general, abstract risk of a volcano eruption (like slipping on a wet deck) may be open and obvious, but the extent of that risk—that the volcano had erupted several times in recent years and geological warning signs were flashing—may not be." *Id.* So too here: while the dangers associated with hot

---

[3] Because the Court finds Fadraga has alleged notice for other reasons, it declines to evaluate Carnival's criticisms of the prior incidents Fadraga identifies as establishing notice.

soup may be "open and obvious" in a general sense, the extent of the danger associated with the particular soup that spilled on Fadraga—resulting in second- and third-degree burns all over her legs—may not be. *Id.*

Ordinarily the Court would agree with Carnival and dismiss a claim like Fadraga's which fails to allege any direct facts establishing that the danger was not open and obvious. But in light of the unique circumstances of the particular hazard alleged here, combined with the long-recognized trend of courts in this district to routinely hold off on resolving whether a condition is open and obvious at the motion-to-dismiss stage, the Court declines to do so here. *See Wiegand v. Royal Caribbean Cruises Ltd.*, 1:19-25100-CV-DLG, 2020 WL 4187816, at *2 (S.D. Fla. Mar. 16, 2020) (Graham, J.) ("Courts in this District have long held that the question of whether a danger is open and obvious relies on a heavily factual inquiry which is inappropriate at the Motion to Dismiss stage of litigation.").

Even though Fadraga's complaint is lacking in basic allegations that would have made the point clear, the Court is nonetheless obliged to construe what factual allegations that are there in the light most favorable to Fadraga. With that, the Court cannot ignore the simple fact that a reasonable person would not readily discern a soup's dangerously high internal temperature or necessarily appreciate the risks associated with it, just through the ordinary use of their senses. *See Iqbal*, 556 U.S. at 679 (recognizing that, in testing the sufficiency of a complaint, "the reviewing court" must "draw on its judicial experience and common sense"); *Krug v. Celebrity Cruises, Inc.*, 745 F. App'x 863, 866 (11th Cir. 2018) ("open and obvious conditions are discernable through common sense and the ordinary use of eyesight") (cleaned up). While later developed facts may ultimately establish that the unreasonably high temperature of the soup was, in fact, open and obvious, for now, common sense and inferences drawn in Fadraga's favor fill in the gaps of her sparsely pleaded complaint. The Court finds the allegations sufficiently, although just barely, allow the Court to infer that the allegedly unreasonably high temperature of the soup was not open and obvious.

### C. The Court is not persuaded that the complaint fails to allege proximate cause.

Carnival's grievance as to proximate cause appears to be that Fadraga points to a vague and speculative laundry list of ways that Carnival could have breached it duty to her, leaving Carnival unable to determine "what exactly Plaintiff is claiming was the cause of her injuries." (Mot. at 14.) Accordingly, says Carnival, her complaint "should be dismissed in its entirety," for failing "to

sufficiently allege what proximately caused her incident." (*Id.*) The Court disagrees.

"To prove causation, a plaintiff must establish a cause and effect relationship between the alleged tortious conduct and the injury—that is, cause in fact (or 'actual' or 'but-for causation')—as well as the foreseeability of the conduct in question producing the alleged harm—i.e., 'proximate causation.'" *Marabella v. NCL (Bahamas), Ltd.*, 437 F. Supp. 3d 1221, 1229 (S.D. Fla. 2020) (cleaned up) (Bloom, J.). Accordingly, "at the motion to dismiss stage, it is enough if one can reasonably infer actual and proximate causation for Plaintiff's injuries from Defendant's alleged negligence." *Id.* All that is needed, then, to satisfy this standard, are allegations of "a sufficiently detailed factual background of the incident" and "the purported foreseeable causes of a plaintiff's injuries." *Id.*

The Court agrees that Fadraga's superficial mention of ten different ways she suggests Carnival may have breached its duty is inartful and unhelpful. However, Carnival's focus on just these allegations alone, to the exclusion of the rest of the complaint, dooms its argument that the complaint should be dismissed in its entirety: Fadraga has supplied sufficient factual allegations, which the Court must accept as true and construe in the light most favorable to Fadraga, establishing proximate cause. According to these allegations, Carnival prepared and served soup that was so hot that, when it spilled on Fadraga, she suffered second- and third-degree burns all over her legs. (Am. Compl. ¶¶ 14, 16, 18.) Carnival fails to explain how these facts don't amount to a plausible showing that Carnival's negligence—in serving unreasonably hot soup—was the foreseeable cause of Fadraga's injuries—"blistering and significant burns" on her legs. (*Id.* ¶ 18.) These facts, combined with Fadraga's general allegation that Carnival's negligence was the proximate cause of her injuries (*id.* ¶ 28) are enough and not, as Carnival suggests, merely an allegation of "fault in the abstract." (Mot. at 13 (quoting *Hercules Carriers, Inc. v. Claimant State of Fla., Dept. of Transp.*, 768 F.2d 1558, 1566 (11th Cir. 1985)).)

### D. While not perfect, the complaint is not so poorly pleaded that the Court will require Fadraga to amend.

Finally, Carnival contends Fadraga's complaint should be dismissed because it is a shotgun pleading. Carnival identifies two defects: first, the entire complaint is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; and second, count one "commits the sin of not separating into a different count each cause of action

or claim for relief." (Mot. at 15 (quoting *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1322 (11th Cir. 2015).)

While the Court agrees that Fadraga's complaint is far from perfect (quite far), both her general negligence count and her failure-to-warn count are nonetheless "informative enough to permit a court to . . . determine if they state a claim upon which relief can be granted." *Weiland*, 792 F.3d at 1326. On the other hand, the Court agrees with Carnival that two aspects of count one are notably problematic: (1) the failure-to-train allegation and (2) the vicarious-liability allegation. Both are distinct causes of action, with distinct elements, all requiring separate factual support—none of which is included in the complaint. That said, Carnival does not suggest, or provide support for the proposition, that the Court should dismiss a subset of allegations within a claim, in piecemeal fashion, where the complaint, in addition to setting forth viable claims, also references, within one of those claims, additional causes of action that are otherwise not supported or even addressed elsewhere in the complaint. *C.f. Holguin v. Celebrity Cruises, Inc.*, 10-20215-CIV, 2010 WL 1837808, at *1 (S.D. Fla. May 4, 2010) (Altonaga, J.) (declining to strike "in line-item fashion" alleged duties purportedly not owed to the plaintiffs). So, while Fadraga's mention of these two other causes of actions—within her general negligence count and without any factual support elsewhere in the complaint—is improper, their inclusion within a complaint that otherwise states a claim for relief is not fatal. Nor does Carnival suggest or supply authority for excising those particular allegations on a line-by-line basis.

In sum, Carnival fails to convince that Fadraga's complaint should be dismissed on shotgun-pleading grounds.

### 4. Conclusion

For the reasons set forth above, the Court **denies** Carnival's motion (**ECF No. 20**). Accordingly, the Court orders Carnival to answer the complaint on or before **May 10, 2024**.

Additionally, Carnival has filed a motion seeking leave to join additional parties beyond the Court's deadline to do so. (Def.'s Mot. for Leave, ECF No. 26.) Although the Court agrees with Fadraga that Carnival fails to establish the good cause set forth in Federal Rule of Civil Procedure 16(b)(4) based on its discovery efforts, the Court nonetheless finds leave to join warranted. Until the Court denied Carnival's motion to dismiss, Carnival had no occasion to file its responsive pleading, providing it an opportunity to lodge its third-party complaint. Accordingly, based on this procedural posture, the Court finds Rule 16's good-cause standard met. Further, because Fadraga devotes all of one sentence to her position that the "Defendant's amendment would be futile," the

Court finds the argument not properly raised. The Court thus **grants** Carnival's motion for leave to join an additional party (**ECF No. 26**). Carnival must file its third-party complaint, joining the additional party, in conjunction with filing its answer to the complaint by May 10, 2024.

    **Done and ordered** in Miami, Florida, on April 30, 2024.

                                                                                                           Robert N. Scola, Jr.
                                                                                                           United States District Judge